\*Robert Howe v. C., H. & D. Ry. Co. et al.

1. Consignment Vests Title in Consignee, Subject to Carrier's Lien and Consignor's Right of Stoppage in Transitu.

The general rule of law is, that upon consignment of goods the title becomes vested in the consignee, subject only to the carrier's lien for freight and consignor's right of stoppage *in transitu,* upon the consignee's insolvency.

2. Insolvency of Consignee Essential to Right of Stoppage in Transitu.

The insolvency of the buyer is essential to the existence of the right of the vendor to stop the goods. If, therefore, the former be solvent at the time of its attempted exercise, the carrier, if he knew the fact, will not only be justified in refusing to give up the goods, or paying any attention to the notice, but it would be his duty to do so.

3. Stoppage in Transitu Re-invests Title in Consignor.

After stopping the goods and directing that they be not delivered to consignee, the consignor can have no claim against the consignee, as this, in effect, annuls the sale and re-invests title in consignor.

4. Carrier Becomes a Stake-holder Between the Parties.

After notice, it becomes the duty of the carrier to hold the goods and not deliver them to the consignee. The law will then afford the parties such opportunity of asserting and enforcing their rights as will effectually guard the interests of the carrier. He then occupies the position of stake-holder between the parties.

---

*For a later decision of the circuit court, upon motion for a rehearing, and to have judgment of the common pleas affirmed, which was overruled and this decision approved, see *post* 000.

5. TIME TO RAISE QUESTION OF CONSIGNEE'S SOLVENCY IS WHEN THE GOODS ARE ORDERED STOPPED.

　　The time to raise the question of the consignee's solvency is when the consignor demands of the carrier that the goods be stopped *in transitu*; the consignor, therefore, cannot, in order to recover the value of goods stopped in transit, and by the carrier delivered to an unauthorized person and lost, be required to prove that the consignee was insolvent when stoppage *in transitu* was demanded.

6. REMEDY IF CARRIER CLAIMS CONSIGNEE IS SOLVENT AND DELIVERS GOODS.

　　If the carrier, when the demand for stoppage *in transitu* is made, states that the consignee is solvent, and goes on and delivers the goods, the consignor has his remedy against the consignee and against the carrier, if the consignee's insolvency is shown.

7. CARRIERS MAY BRING GOODS INTO COURT AND REQUIRE CLAIMS TO BE ESTABLISHED.

　　If the carrier, after the goods have been stopped *in transitu*, has reason to fear a claim by consignee, it may refuse to deliver the goods to either the consignee or the consignor, and, by bringing them into court, require claimants to interplead and establish their rights.

8. IF CARRIER RECOGNIZES RIGHT OF STOPPAGE IN TRANSITU AND FAILS TO RE-DELIVER TO CONSIGNOR.

　　But where the carrier recognizes the right of consignor to stop the goods from being delivered to consignee, and undertakes to re-deliver same to consignor, or to some person upon his order, but fails so to do, and the goods are lost to the consignor, the carrier is liable for the value thereof, and irrespective of consignor's actual right of stoppage *in transitu.*

SWING, J.

　　This was an action by Howe against the Cincinnati, Hamilton & Dayton Railway Co. and the Chicago, Burlington & Quincy Railroad Co. in the court of common pleas, the petition alleging that the defendants were common carriers between the city of Cincinnati, Ohio, and the city of Omaha, Nebraska. That as such the plaintiff delivered to said defendants at Cincinnati, Ohio, on November 15, 1895, two barrels of whiskey of the value of $166.40, to be transported to one J. Gee at Omaha, Nebraska, and that the defendants received said whiskey and agreed to transport the same to the person at the place named for and in consideration of certain charges agreed upon.

　　That while said whiskey was in transit, and was in the custody of said defendants, the plaintiff learned that said J. Gee, to whom it was consigned, was financially irresponsible, and said whiskey not having been paid for by said Gee, the plaintiff requested said defendants, when said whiskey reached Omaha, to deliver the same to one Edward O'Connor instead of said Gee, which said defendants agreed to do. That said whiskey arrived at Omaha, but it was not delivered to said Edward O'Connor, nor to any other person representing said plaintiff, but said defendants delivered said whiskey to one not authorized to receive the same, contrary to the instructions of the plaintiff and the agreement of the parties, whereby plaintiff was damaged in the sum of $166.40.

　　The evidence showed that Howe delivered to the C., H. & D. Ry. Co. at Cincinnati two barrels of whiskey consigned to J. Gee, Omaha, Nebraska. That this whiskey was delivered by said railway company to the C., B. & Q. Ry. Co., a connecting line from Chicago to Omaha. That said whiskey had been purchased by said Gee of said Howe on credit. That after said whiskey had come into the possession of said C. B., & Q. Ry. Co., the plaintiff notified the C., H. & D. Ry. Co. not to deliver said whiskey to said Gee, but to deliver it to Ed. O'Connor, attorney, at

Omaha. The notice was given to the C., B. & Q. Ry. Co., and said latter company, acting under said instruction, did not deliver said whiskey to said Gee, nor did it deliver said whiskey to sa' l O'Connor, but did deliver said whiskey to some transfer company at Omaha, by whom said whiskey was lost.

At the conclusion of the evidence of the plaintiff the court, on motion of the C., B. & Q. Ry. Co., directed a verdict for the defendant.

This action is brought in this court to set aside said judgment.

The general rule of law is, that upon the consignment of goods the title becomes vested in the consignee, subject only to the carrier's lien for freight, and the consignor's right of stoppage *in transitu,* upon the consignee's insolvency. This rule is elementary and without exception. Growing out of this general rule of law are certain other rules; among them are these:

First. The duty and liability of carriers after notice. In Hutchinson on Carriers, sec. 421, it is said:

"The insolvency of the buyer is essential to the existence of the right of the vendor to stop the goods. If, therefore, the former be solvent at the time of its attempted exercise, the carrier, if he knew the fact, will be not only justified in refusing to give up the goods or pay attention to the notice, but it would be his duty to do so. He obeys the order or demand at his peril in any case. For while a rightful stoppage protects the carrier against the claims of the consignee, yet if it should turn out that the purchaser of the goods was solvent, the notice or demand would be entirely without authority. If, therefore, the carrier refused to give up the goods to the consignee, who is solvent, upon his demand, the latter might maintain an action of trover against him at once. If on the other hand the carrier fail to withhold the goods upon a notice to do so, or to surrender their possession to the vendor upon his demand, or if after such notice or demand he should deliver them to the buyer and it should turn out that the latter was insolvent, the carrier will be liable to the vendor, at least to the extent of the buyer's indebtedness for the goods."

Second, at sec. 422, of the same author, it is said:

"The law of stoppage *in transitu,* therefore, becomes of great importance to the common carrier, and when a notice is given or a demand is made upon him for the goods by a vendor who claims the right to avail himself of it in the particular case, it places him in very nearly the same situation as when a demand is made for the goods by one who claims adversely to the bailor or his consignee. If it be doubtful whether the right exists to stop the goods, the carrier may, as in that case, instead of refusing to comply with the notice or the demand, require that he shall be allowed a reasonable time to investigate the condition of the buyer, and if after inquiry he shall be unable to satisfy himself and does not choose to assume the responsibility of a delivery to either seller or buyer, or to act upon the demand of the vendor that the goods shall be withheld from the consignee, he may for his own security resort to legal proceedings to have the question determined as in the case of adverse claimants of property."

On this latter subject it is said in 2 Rorer on Railways, p. 1339:

"After notice it becomes the duty of the carrier to hold the goods and not deliver them to the consignee. The law will then afford the parties, consignor and consignee, or the assigns of the latter, such opportunity of asserting and enforcing their rights to the property as will effectually guard the interests of the carrier from the responsibility of delivery to either when not entitled to receive the same. We do not conceive it to be

the duty of the carrier to decide between them and actually deliver the goods to the alleged consignor, or that it is required by law, for as much as the carrier can seldom, if ever, know, and is not made the judge to decide, whether or not the circumstances exist which re-invest the property in the consignor, or, indeed, whether the person claiming to be the consignor be in fact such or not; and especially on long lines of railway is personal knowledge the more impracticable. After notice he occupies the position of a stake-holder between the parties."

But in this case the carrier did not proceed to act in accordance with either of the above provisions. It did not deliver the goods to either the consignor or the consignee, or assume the position of a stake-holder and have the parties set up their claims to the goods and have their respective rights determined—in fact, there is nothing to show that Gee, the consignee, ever asserted any claim to the goods. Neither is there anything to show whether Gee, the consignee, is insolvent or not.

It is urged by the railway company that Gee not having been shown to be insolvent, that the plaintiff can not recover; but it seems to us that the time to have raised this question, that Gee was not insolvent, was when the plaintiff demanded of the company that the goods be not delivered to Gee. If the company had said to the plaintiff, when the demand for stoppage *in transitu* was made, that Gee was solvent, and had gone on and delivered the goods to Gee, the plaintiff would have had his remedy against Gee, and against the railway company, if he had failed to collect from Gee; he could have collected from the company if insolvency of Gee could have been shown. Or, if the railway company had refused to deliver the goods to either the consignor or consignee, and had called upon the parties to establish their rights to the goods, as it had a right to do, all parties would have been protected in their rights. But the company, acting upon the demand of the consignor, stopped the goods and did not deliver the same to the consignee. After stopping the goods and directing that they be not delivered to the consignee, the consignor could have no claim against the consignee for the goods, for while the goods were sold and delivered by the consignor to the consignee, as between the two, when the consignor stopped the goods *in transitu*, under a claim of ownership, this in effect annulled the sale, and re-invested the property in the consignor, and thereby destroyed any right of action by the consignor against the consignee, for the value of the goods.

It may be that Gee would have a right of action against the company, but none has been asserted, and if the company had any reason to fear a claim by Gee, it was its duty to bring the goods into court and ask that the claimants interplead and establish their rights. But this the company did not do, but, on the contrary, it recognized the right of the plaintiff to stop the goods from being delivered to Gee, and undertook to re-deliver the goods to the plaintiff, but failed to re-deliver the goods as directed, and delivered the goods to somebody other than either the consignee or consignor. Under this state of facts, it seems clear to us that the company is liable to the plaintiff for the value of the goods, and that when the court directed a judgment for the defendants, it erred.

The facts not having been agreed to, this court can not render judgment for the plaintiff, but a judgment will be entered reversing the judgment for the reason that the same is against the law and the evidence, and remand the cause to the court of common pleas for further proceedings.

*Milton Sater,* for plaintiff in error.

*A. B. Benedict,* for defendant in error.